JUDGE HARDIN
delivered the opihtoh op the court.
The appellant, James H. Haggard, being one of the distributees of the estate of his father, John Haggard, deceased, late of the state of Texas, and also the assignee of the interest of his brother, John T. Haggard, in said estate, and being a resident of Clark County, Ky., on the 23d day of September, 1861, in the state of Kentucky, drew and delivered to the appellee, J. N- Conkwright, also a resident of Kentucky, an order addressed to S. A. Elkin, administrator of said John Haggard, deceased, requesting him. to pay the amount in his hands to which the appellant was entitled as aforesaid to A. I. Taul, who as well as Elkin resided in Texas; the order containing the following statements: “ In consideration, John N. Conkwright has given his obligation for the amount that you may choose to hand over to said A. I. Taul. Not knowing the amount, I have left that blank for you to fill up, which I do authorize you to do; and this shall be a good receipt against the amount.”
And at the same time, and as part of the same transaction, the appellee executed and delivered to the appellant his obligation, which is as follows :
“ Inasmuch as James H. Haggard has sent an order to S. A. Elkin, administrator of John Haggard, deceased, now living in *19 the state of Texas, for blank amount for A. I. TauFs benefit, I do obligate myself to pay said James H. Haggard any amount that said Elkin may hand over to said Taul, when ascertained — the above amount not known, said Haggard is to have ten per cent, interest per annum from the time the money is paid over in TauFs hands till paid him. J. N. Conkwright.”
To an action prosecuted by the appellant, on the covenant above set out, to recover the amount of several payments made by Elkin to Taul upon said order of the plaintiff, which upon demand the appellee refused to pay, he pleaded in connection Avith the facts already stated, in substance, that the contract of which the order in favor of Taul was a part, and which formed the consideration of the contemporaneous agreement of the defendant, Avas illegal; because it was made in violation of the proclamation of the President of the United States, issued August 16,1861, forbidding all commercial intercourse between the citizens of Texas and other states then in rebellion against the laws and authority of the United States and the citizens of Kentucky and other states of the Union which adhered to and were loyal to the Government of the United States; said proclamation having been issued in obedience to an act of Congress approved July 13, 1861. And he further alleged that the money collected by Taul of Elkin Avas received by him in the state of Texas, as agent of the plaintiff, during the time the people of Texas were in rebellion as aforesaid, and Avhile the plaintiff and defendant each resided in Kentucky, Avhich at the time adhered to the United States and was within the military lines of the Federal Government.
The matters of defense thus presented being adjudged to be sufficient on demurrer, and the plaintiff agreeing that the averments of the answer were true, a verdict and judgment were rendered for the defendant in accordance Avith the previous ruling and a peremptory instruction of the court; and the plaintiff has appealed from the judgment.
*20 This court has repeatedly recognized the proclamation of the 16th of August, 1861, as public notice of the previous congressional recognition of a state of war between the seceding and adhering states of the Union, which, according to the laws of war as well as the act of Congress, suspended all peaceful relations, and interdicted commercial intercourse between the people of one belligerent and those of the other; and, as a logical and legal sequence of that state of non-intercourse, all commercial contracts made in or founded on a violation of it were illegal and void.
But, conceding that this is so, the question arises, What principle of law or public policy has been violated by the contract in this case ? The agreement sought to be enforced was not between enemies, but citizens of Kentucky, owing allegiance to the same government; and though it operated to transfer the money which was the subject of the contract from the hands of one citizen of the enemy’s country to those of another, it subjected nothing to the forfeiture denounced by the act of Congress as coming from or proceeding to the opposing hostile section or state. It is insisted, however, for the appellee that the transaction involved commercial intercourse between the contracting parties in Kentucky and Taul and Elkin in Texas, the order of the appellant being drawn upon one of them in favor of the other. This may be true, constructively and incidentally, and yet not have affected the validity of the transaction, at most, further than to suspend the authority of Taul to act as agent during the proclaimed non-intercourse. But according to the recent case of Wood v. Smith, 7 Wallace, 447, it was not illegal for Taul to receive the money in Texas provided he did not violate the law by remitting it to the party entitled to receive it in Kentucky. The Supreme Court in that case, in referring to the rule that interest is not recoverable on debts between alien enemies during war of their respective countries, said: “ That rule can only apply when the *21 money is to be paid to the belligerent directly. When an agent appointed to receive the money resides within the same jurisdiction with the debtor, the latter can not justify his refusal to pay the demand, and of course the interest which it bears. It does npt follow that the agent if he receive the money will violate the law by remitting it to his alien principal.”
An authority more directly applicable to this case, if not conclusive of the question involved, is the opinion of the United States Circuit Court, delivered by Justice Livingston of the Supreme Court in 1820, in the case of the United States v. Barker, 1 Paine’s Circuit Court Reports, 156; the question decided being whether a bill of exchange drawn by a citizen of the United States on a British subject at Liverpool, on the 2d day of July, 1814, was unlawful, this country and Great Britain being then at war. The conclusion of the court, after reviewing the authorities cited, was as follows :
“The opinion of the court then is that the plaintiff by drawing the bill in question violated neither the laws of nations nor any municipal regulation of his own country ; that he did an act perfectly innocent, if not meritorious, and which has too long received the sanction of public opinion and general usage to render it necessary or proper to be checked by the interposition of a court of justice, which could not be done without sacrificing the interest of our innocent and unsuspecting merchants to gratify the cupidity of those who may since have been advised that the transaction was unlawful, and may be desirous of taking advantage of it.”
Although the answer of the defendant in this case, which was agreed to as true by the plaintiff, represents that Taul in receiving the money acted as the agent of the plaintiff, the contract between the parties neither stipulates nor seems to contemplate that Taul should pay over the money when collected to the plaintiff, but expressly provides for the payment *22 by the defendant of such an amount as Taul should receive, with ten per cent, interest thereon from the time of Taul’s receipt of the money in Texas.
Whatever may have been the relative rights of the appellee and Taul, who it appears was his father-in-law, and whether the object of the appellee in procuring the payment of the money to Taul was to satisfy an indebtedness to him, or that Taul should remit it to him or hold it for his use, the contract had the effect to divest the appellant of his right to the funds in the hands of Elkin, which he had a right to dispose of, although he might not withdraw them during the war; and this, in our opinion, was a valid and sufficient consideration for the covenant of the appellee.
It results that the court erred in overruling the demurrer of the plaintiff to the answer of the defendant, and in instructing the jury, upon the agreement of facts, to find for the defendant.
Wherefore the judgment is reversed, and the cause remanded for a new trial, in conformity to the principles of this opinion.